AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

District of South Dakota

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

DVD containing January 21, 2020, download of the encrypted compressed storage file containing the content of Facebook Users "Bill Redd," Vanity Id: billredd14, Facebook ID: 100001520304503, Colton Bagola, Facebook ID: 100001907102077, GS M Ardnasac, Vanity Id: Casandra.goings and Jaden Richards-Facebook IDs 100006468780193, 100004690455232, and 100044511186608, Sloane Bull Bear, Vanity Id – sloane.bullbear.92, Facebook ID – 100042860717588, which are in secure storage at the Rapid City Office of the Federal Bureau of Investigation.

Case No.   5:20-mj-23

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

DVD containing January 21, 2020, download of the encrypted compressed storage file containing the content of Facebook Users "Bill Redd," Vanity Id: billredd14, Facebook ID: 100001520304503, Colton Bagola, Facebook ID: 100001907102077, GS M Ardnasac, Vanity Id: Casandra.goings and Jaden Richards-Facebook IDs 100006468780193, 100004690455232, and 100044511186608, Sloane Bull Bear, Vanity ID – sloane.bullbear.92, Facebook ID – 100042860717588, which are in secure storage at the Rapid City Office of the Federal Bureau of Investigation, as further described in Attachments A and B, which are attached to and incorporated in this Application and Affidavit.

located in the _____ District of _____ South Dakota _____ , there is now concealed *(identify the person or describe the property to be seized)*:

DVD containing January 21, 2020, download of the encrypted compressed storage file containing the content of Facebook Users "Bill Redd," Vanity Id: billredd14, Facebook ID: 100001520304503, Colton Bagola, Facebook ID: 100001907102077, GS M Ardnasac, Vanity Id: Casandra.goings and Jaden Richards-Facebook IDs 100006468780193, 100004690455232, and 100044511186608, Sloane Bull Bear, Vanity ID – sloane.bullbear.92, Facebook ID – 100042860717588, which are in secure storage at the Rapid City Office of the Federal Bureau of Investigation, as further described in Attachments A and B, which are attached to and incorporated in this Application and Affidavit.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1111(a) and 1153 | Second Degree Murder |
| 18 U.S.C. §§ 3 and 1153 | Accessory after the Fact |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FBI SA Matt Weber
*Printed name and title*

Sworn to before me and signed in my presence.

Date:    01/29/2020

_____
*Judge's signature*

City and state:  Rapid City, SD

Daneta Wollmann, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: DVD containing January 21, 2020, download of the encrypted compressed storage file containing the content of Facebook Users:<br><br>Bill Redd-Facebook ID: 100001520304503;<br><br>Colton Bagola-Facebook ID: 100001907102077;<br><br>GS M Ardnasac, Vanity Id: Casandra.goings;<br><br>Jaden Richards-Facebook IDs 100006468780193, 100004690455232, and 100044511186608; and<br><br>Sloane Bull Bear, Vanity ID – sloane.bullbear.92 Facebook ID - 100042860717588<br><br>which are in secure storage at the Rapid City Office of the Federal Bureau of Investigation | Case No. __5:20-mj-23_____<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

State of South Dakota    )
                         ) ss
County of Pennington     )

I, Matt Weber, Special Agent of the Federal Bureau of Investigation FBI

being duly sworn, states as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI), and I am assigned to the Rapid City Resident Agency, Rapid City, South Dakota.  I have approximately ten years of law enforcement experience with the FBI as a Special Agent.  During that time, I have investigated federal crimes occurring within Indian country, including violations of 18 U.S.C. §§ 1111(a) and 1153, Second Degree Murder, and 18 U.S.C. §§ 3 and 1153, Accessory after the Fact.

2.      The information set forth below is based upon my knowledge of an investigation conducted by the FBI and the investigation of other law enforcement agents and officers.  I have not included each and every fact obtained pursuant to this investigation, but have set forth those facts that I believe are essential to establish the necessary probable cause for the issuance of the search warrant.

3.      I make this affidavit in support of an application for a search warrant for information associated with certain Facebook user IDs that were stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under Second Degree Murder, in violation of 18 U.S.C. §§ 1111(a) and 1153, and Accessory after the Fact, in violation of 18

2

U.S.C. §§ 3 and 1153 (hereinafter "Target Offenses") to require Facebook to disclose to the government records and other information in its possession pertaining to the subscribers or customers associated with the user IDs, as described in Attachment B.

4.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that evidence of a violation of the Target Offense is present in the accounts of: "Bill Redd," Vanity Id: billredd14, Facebook ID: 100001520304503, Colton Bagola, Facebook ID: 100001907102077, GS M Ardnasac, Vanity Id: Casandra.goings and Jaden Richards-Facebook IDs 100006468780193, 100004690455232, and 100044511186608, Sloane Bull Bear, Vanity ID – sloane.bullbear.92, Facebook ID – 100042860717588, that are stored at premises controlled by Facebook Inc. (hereinafter "the accounts") and that evidence of those crimes will be found in the content of the encrypted compressed storage file provided to me on Facebook's law enforcement portal in response to a previous search warrant.  . I thereafter downloaded the file, but did not review the contents of the file, nor

3

did I provide access to the file for anyone else to view. The downloaded file is currently in the possession of the FBI. This affidavit is sought to search the contents of the downloaded file.

6.      There is also probable cause to search the information described in Attachment A for evidence, contraband, or fruits of these crimes, as further described in Attachment B.

7.      Encrypted compressed storage file" as used herein, refers to a computer file whose contents of one or more files are compressed for storage or transmission, one example is a "zip file." The compressed storage file is used to large files or multiple files into one file for ease of transfer. The ESPs create the file then provide access to the file to law enforcement typically via the ESP's law enforcement portal.

8.      "Zip file," as used herein is a type of "Encrypted compressed storage file."

9.      From my training and experience, I am aware that when Electronic Service Providers, like Facebook, provide access to an encrypted compressed storage file, typically a zip file, on its law enforcement portal. The link is to a file that is limited to the content of the account authorized by the search warrant and no other accounts.

10.    It is my understanding that I must seek this additional warrant to review the responsive materials out of an abundance of caution to comply with

4

the issue raised in the recent decision in *United States v. Nyah*, 928 F.3d 694 (8th Cir. 2019).

## **PROBABLE CAUSE**

11.    On December 17, 2019, at approximately 3:05AM, Tasheena Jones called the Oglala Sioux Tribe Department of Public Safety Dispatch (OST DPS) to report a shooting incident in North Ridge Housing, Pine Ridge, SD.  Jones hung up before an exact location could be gathered.  At approximately 3:39 AM, your affiant learned from a review of OST DPS Dispatch records that a female, Casandra Goings, called to report Sloane Bull Bear was shot at Bill Reddy's residence, House Number 14, North Ridge Housing, Pine Ridge, SD.

12.    OST DPS law enforcement officers arrived on scene and found the victim, Sloane Bull Bear, Date of Birth 7-22-89, deceased on the southwest exterior of the residence.  On December 18, 2019, your affiant attended the autopsy of Bull Bear, which was conducted by Forensic Pathologist Dr. Donald Habbe.  The cause of death was from a gunshot wound to the back of his head. Your affiant learned from Dr. Habbe that the wound contained stippling, meaning that the firearm was in very close proximity to the back of Bull Bear's head before discharging.

13.    Your affiant learned that SA Thayer interviewed a witness, Casandra Goings, on December 17, 2019.  FBI SA Kevin Seymore interview Goings on December 17, 2019, and your affiant interviewed Goings on December 18, 2019.

5

Your affiant learned from Goings that Bull Bear contacted her via Facebook Messenger sometime prior to the evening of December 16, 2019. After Bull Bear contacted Goings, the pair traveled to Pine Ridge and went to Billy Reddy's residence on the evening of December 16 and morning of December 17, 2019.

14.    Your affiant learned from Goings that she and Sloane Bull Bear arrived at Number 14 North Ridge Housing shortly after midnight on December 17, 2019. Bull Bear and Goings sat at the kitchen table next to Billy Reddy and Ben Freeman. According to Goings, within 5-10 minutes after sitting at the kitchen table, Colton Bagola and an unknown male walked into the residence. Goings described the unknown male as a "cowboy." Your affiant learned that Ben Freeman later identified the cowboy as Jesse Buckman. Your affiant learned from SA Seymore that Goings told him that Bagola arrived while she was outside and that she and Bagola walked into the residence at about the same time.

15.    Your affiant is aware that Goings told SA Thayer that her chair broke,[1] causing her to move to the center of the room. Goings said that Bagola kept staring at her while the group was in the kitchen. Your affiant learned from SA Thayer that Goings told him that they were drinking at the residence. Goings said that the group was talking about "haircuts," and that Bull Bear asked Goings if she was ready to leave. Your affiant learned from Goings that she and Bull Bear got up to exit the residence through the southwest door. Goings told

_____

[1] Your affiant learned from a review of the audio interview with SA Thayer that Goings stated at different times that the chair broke and almost broke.

your affiant that she heard a pop as she was leaving the residence, and that the next thing she saw was Bull Bear on the ground, "snoring." Goings told your affiant that she left the residence and went to Tasheena Jones' residence, along with Reddy and Thelma Ponds. Your affiant learned from Goings that Reddy drove the threesome to Jones' residence. Your affiant is aware that Goings told SA Thayer that she saw Ben Freeman and Colton Bagola running down the street away from Billy Reddy's residence. At Tasheena Jones' residence, Goings spoke with Billy Reddy and Thelma Ponds. Goings said that Billy told her that Colton told Billy Reddy that he (Bagola) was "wanting to kill somebody." Goings also told your affiant that Colton told Billy that he had a ".38" (caliber handgun). Your affiant is also aware that Goings told SA Thayer she did not know if Bull Bear had a gun, but he mentioned that they should "let some off," a term your affiant believes is a reference to shooting.

16.    Your affiant is aware, according to Goings, that she called 911 at approximately 1:28 AM and that the called failed. Goings also told your affiant that she called back later and stayed until police arrived. Your affiant is aware that OST DPS records show Goings calling at 3:39 AM, approximately 2 hours after she first attempted to call 911. Your affiant asked Goings why she waited 2 hours from the time the shooting took place until she called 911 again. Goings told your affiant that Ponds and Freeman were scrambling around looking for their things. Your affiant asked Goings if they were gathering their "dope," to

which Goings responded that she did not see the dope, but believed that was possible.

17. On December 18, 2019, your affiant spoke with Goings about the whereabouts of Reddy. Goings showed your affiant Facebook Messenger messages between herself and Reddy. Your affiant was only shown some of the messages. Your affiant observed and photographed a partial conversation between Reddy and Goings, however, your affiant was only shown Reddy's response: "Ugh we tried yo."

18. Your affiant observed the next message sent by Goings to Reddy on Monday at 11:25AM. Goings told Reddy: "Fawk man" "Lol you guys back on the Rez[.]"

19. On Monday, December 16, 2019, at 1:52 PM Goings messaged Reddy, "Hey ask Sloane if he gonna still pay for that shot[2] I got him[?]" Reddy responded, "Sloan bounced....I bailed with someone[.]"

20. On Tuesday, December 17, 2019, at 3:43 AM (4 minutes after the 911 call was placed by Goings), Goings wrote to Reddy: "I'm scared I already have depression really bad and this makes me wanna kill myself[.]" "Like it (sic) my fault[.]" "I don't know what to do I'm really scared."

21. On Tuesday, December 17, 2019, at 1:48 PM, Goings messaged Reddy: "Bill y'all they said you running making you look guilty[.]" "Just tell them

---

[2] Your affiant believes that the term "shot" refers to intravenous drug injection.

your story." At 3:00 PM Reddy responded, "So did you talk to them cos (sic) I will but I don't want to go to jail." Goings replied: "Yes bill they said if your (sic) that scared to go to jail the investigators will bring you up here and talk to you and take you back[.]" "Hey I'm gonna call you on Jess is (sic) phone so answer." Your affiant believes there is probable cause to search Goings and Reddy's Facebook accounts based on the communications provided by Goings to your affiant.

22.    Your affiant is also aware that Goings corresponded with Bull Bear and Bagola via Facebook Messenger. Your affiant is aware that on December 17, 2019, FBI SA Kevin Seymore spoke with Goings. Goings told SA Seymore that all of her friends, Reddy, Bagola, Bull Bear, Jones, Thelma Pond, and Ben Freeman all had Facebook and that was the way they communicated with each other. Your affiant is aware that Goings advised SA Thayer that Bagola "wrote her," asking for a ride. Goings advised SA Thayer that she believed it was approximately one month ago that Bagola asked her for a ride.

23.    Your affiant also learned from a review of Goings' interview with SA Thayer that Goings told SA Thayer that Bull Bear contacted her, presumably via Facebook Messenger, at approximately 4:00 PM stating that he was going to pick her up. Your affiant learned that Goings told SA Thayer that by the time Bull Bear arrived, it was approximately 10:00PM. Your affiant learned that Bull Bear told Goings that she was going to be his driver and that they were going to the Reservation. Your affiant learned from a review of SA Thayer's interview that

9

Goings was unaware of what they were going to do on the Reservation, as Bull Bear did not tell Goings, but that they ended up at Billy Reddy's residence. Additionally, your affiant learned from a review of SA Thayer's interview with Goings that she advised she had messaged back and forth with Bull Bear approximately two days before the shooting about driving him around.

24.     Based on Goings' statement that all of her friends correspond with one another via Facebook, as well as her statement about communicating with Bagola, Reddy, and Bull Bear via Facebook, your affiant believes there is probable cause to search Bagola's, Reddy's, Bull Bear's, and Goings' Facebook accounts.

25.     Your affiant is also aware that Facebook collects geolocation history in the form of latitude and longitude coordinates and that this information can be acquired through a search warrant of a Facebook account.

26.     Your affiant is aware that Goings provided SA Seymore with the user names for the individuals listed in this search warrant, excluding Jaden Richards' username.[3]  Goings advised SA Seymore that she checked Bagola's Facebook and that it was no longer active, leading her to believe that Bagola deactivated his account.  Your affiant has reason to believe that the individuals involved in the homicide of Bull Bear communicated with each other prior to and after the shooting via Facebook Messenger based on Goings' statement that that

---

[3] Based on Richards' statements to SA Beery, your affiant believes there is probable cause to search Richards' Facebook accounts.

10

was how they communicated, and that those individuals had cell phones that operated on WiFi. Your affiant also learned from SA Thayer's interview with Goings that Bull Bear had a cell phone through Straight Talk. Your affiant is aware that Bull Bear's wallet as well as his cell phone were missing at the time his body was recovered from House Number 14 in North Ridge. Your affiant is aware that a search warrant through Facebook can provide geolocation data and could provide the location of where Bull Bear's phone traveled before, and after the homicide.

27.   Your affiant acquired exterior surveillance video from FBI SA Christian Corwin who acquired the video from a neighbor, Lyle Big Crow. The video shows a male individual running towards a car and then walking towards the location of where a light colored SUV later drove by. Your affiant is aware that Goings advised that the individual looked like Bagola during an interview on December 17, 2019.

28    Through the investigation your affiant acquired information that Bagola's girlfriend is Jamie Richards. Your affiant also learned that Jaden Richards, Jamie Richards' sister, drives a white Dodge Durango. Your affiant also learned from a review surveillance video that was collected from a neighbor that it appears that a light colored SUV arrived in the location of where Bagola is last seen in the surveillance video. Your affiant believes that Bagola was picked up and transported to an unknown location by the driver of the SUV.

11

29. On December 19, 2019, your affiant learned that FBI SA Stephen Beery interviewed Jaden Richards at the Justice Center in Pine Ridge, SD. Richards was in custody on separate unrelated charges.

30. Your affiant learned from SA Beery that Jaden Richards admitted to being at Reddy's residence prior to and after the shooting took place. According to Richards, your affiant learned from SA Beery that Jaden Richards, her sister Jamie Richards, Reddy and Bagola left Reddy's residence to retrieve money (at an unknown location) during the time the homicide occurred. Your affiant learned from SA Beery that Richards told him that when they returned, approximately 10-15 minutes later, they observed Bull Bear dead at Number 14.[4] Richards advised that the group searched Bull Bear for meth and that she picked up a spent shell casing. Your affiant also learned that Bagola told Richards to get rid of the shell casing and that Richards pretended to throw the shell casing, but actually put it in her pocket. Richards told SA Beery that she had the shell casing, but that she was not sure what happened to it. Your affiant learned that SA Beery asked Richards if she used Facebook or texting to communicate during the incident. Richards nodded in affirmation to SA Beery's question. Your affiant learned that SA Beery asked Richards which platform she used and Richards then stated "all of them." Your affiant believes that Richards'

[4] Your affiant is also aware that at other points in the conversation, Richards claimed that Bull Bear was breathing.

12

conversations with the various individuals are relevant to the events, times and locations regarding what transpired on December 16-17, 2019.

31.    Following SA Beery's conversation with Richards, your affiant is aware that SA Beery went to the jail in order to seize Richards' cell phone.  SA Beery did not locate the cell phone at the jail, but did observe Richards' clothing and shoes.  SA Beery observed what appeared to be a red blood like substance on the left inner side of the shoe.  SA Beery seized Richards' shoes based on Richard's statement and the appearance of the stain on the side of the shoe.  Additionally, your affiant is aware that SA Beery collected Richards' phone from OST DPS West Captain John Pettigrew.  Your affiant is also aware that the officer who arrested Richards on December 18, 2019, at approximately 2:00 AM was OST DPS Officer Andrew Twiss.

32.    Your affiant is aware that SA Beery seized Richards' phone, a black IPhone with a cracked screen seized by OST DPS Officer Twiss on December 18, 2019.

33.    Your affiant is aware that on or about December 19, 2019, SA Seymore sent a grand jury subpoena to Facebook regarding subscriber information, as well as IP address pertaining to Thelma Pond, Ben Freeman, Jaden Richards, Billy Reddy, Tasheena Jones, and Colton Bagola.  Your affiant learned Bagola deactivated his account at 3:30 AM on the morning of the homicide.  Additionally, your affiant learned that Pond and others were utilizing Facebook later on December 17, 2019, after the homicide.

13

34.    On December 18, 2019, your affiant learned that OST DPS Officer Derek Puckett received information pertaining to Bagola's whereabouts from an individual related to Bagola's grandmother (Delores Little Hawk).  Your affiant learned that Officer Puckett was advised by a relative, Antonia a/k/a Simone Little Hawk, that Delores Little Hawk called her and said that Bagola was sleeping on her couch at her residence, 322 Curtis Avenue, Rapid City, SD.  According to Simone Little Hawk, Delores Little Hawk wanted law enforcement to remove Bagola.  Your affiant learned that Little Hawk advised FBI SA Jerrick Myers that Bagola arrived to her residence at approximately 7-8:00 AM on December 18, 2019, and that Bagola was tired from running.  Multiple special agents were tasked with surveilling the residence.  At no point on December 18, 2019, did agents observe Bagola leave the residence or acquire independent information that Bagola was in fact inside the residence, other than Little Hawk's statements to SA Myers.  However, your affiant did receive information from Delores Little Hawk's sister, Simone Little Hawk, that Bagola told Delores Little Hawk that Bagola missed Simone, thus implying that Bagola and Delores Little Hawk were in current communication.

35.    Your affiant learned that later on December 18, 2019, SA Myers learned from a family member that Bagola had left with his girlfriend to get something to eat and had not returned.  Your affiant learned from SA Myers that Little Hawk was uncertain as to who Bagola's girlfriend was as she would not provide a name.  Additionally, Little Hawk told SA Myers that Bagola's girlfriend

claimed to have been with Bagola on the night/morning when according to Little Hawk, "whatever down there happened." Your affiant is aware that Bagola's girlfriend is Jamie Richards.

36.    On December 20, 2019, your affiant learned that Billy Reddy was arrested by the OST DPS and was in custody at the Justice Center in Pine Ridge. Your affiant interviewed Reddy that same day. Reddy stated that Bagola shot Bull Bear at Number 14 North Ridge Housing. Reddy told your affiant that Bagola had arrived at Number 14 prior to Bull Bear arriving and that Bagola pulled out a silver revolver and placed it on the table. Your affiant also learned from OST DPS Officer Twiss that Bagola has posted photos of himself with the silver revolver on Facebook in the past. According to Reddy, Bagola was acting weird and stated he "needed to take a soul." Reddy stated that Bagola said that it was going to be either, Scud Martin,[5] Ben Freeman, Billy or himself (Bagola). Bagola then left and returned after Bull Bear and Goings arrived at Number 14. According to Reddy, Bagola and a "cowboy" type guy showed up. Your affiant learned that Bull Bear got up to leave and that Bagola "whipped" out a gun and shot Bull Bear. Your affiant learned that Reddy believed the bullet missed Bull Bear, but that when Bull Bear slumped over and started bleeding, that he then believed Bull Bear had been shot. Your affiant learned that Goings drove Bull Bear's white car to Oglala, SD, where they attempted to make a 911 call to police.

---

[5] True identity is Dale Martin Junior.

15

The call would not go through, so they turned around and went to Tashina Jones' residence in Pine Ridge. Your affiant learned that Reddy told him that Goings then left and called 911. Your affiant is aware that Facebook can provide location history in the form of latitude and longitude and that a search of Reddy's account could provide geolocation history.

37.   Your affiant learned that Reddy texted Bull Bear as well as sent messages back and forth to Bagola via Facebook Messenger. According to Reddy, he performed a "screen shot" of these messages and preserved them on his black IPhone with a white case.

38.   On December 20, 2019, your affiant interviewed Ben Freeman. Freeman told your affiant that he was at Number 14 during the homicide. Your affiant learned that Freeman had his head down during the time Bull Bear got up to leave, but that he heard the gun go off and saw Bull Bear on the ground following the shooting. Freeman told your affiant that after the shooting he saw Bagola take off running and that Bagola had a gun in his hand. Your affiant learned that Freeman took off to the "old folks" home and waited there until an unknown time when he eventually went to his girlfriend's house. Your affiant learned that Freeman told him that Bagola often pulls out the silver gun and plays with it.

39.   Your affiant received a complaint and arrest warrant for Bagola's arrest on December 20, 2019, from Magistrate Judge Daneta Wollmann. Later that evening, Bagola was taken into custody at his grandmother's residence.

16

Your affiant advised Bagola of his Miranda Rights and Bagola waived his rights and agreed to an interview.

40.    Bagola denied deactivating his Facebook account.  Bagola denied shooting Bull Bear and denied being in the residence on the day of the shooting. Bagola denied owing a firearm and advised your affiant that he was being set up.

41.    Your affiant is aware that Bagola is an enrolled member of the Oglala Sioux Tribe and that the location where the homicide occurred, Pine Ridge, SD, is within the exterior boundaries of the Pine Ridge Reservation.

42.    On January 6, 2020, your affiant sought and obtained a search warrant for the Facebook accounts at issue.  Your affiant executed the court's search warrant the same day by serving it on Facebook via its law enforcement portal.  Facebook did not provide the responsive materials within 14 days of the issuance of this Court's search warrant.  Your affiant received the original return from Facebook on the search warrant on January 21, 2020.  On January 21, 2020, your affiant's office downloaded the files with success.  The information was in the form of a zip file, a PDF file, and included a Certificate of Authenticity.  Your affiant's office printed the Certificate of Authenticity, then burned the zip file and PDF file to a DVD on that same date, January 21, 2020.

43.    Although the information was accessed, it was accessed solely for the purpose of confirming the file was accessible.  To date, no parties to this warrant have reviewed the material contained on the DVD.  Your affiant has not opened or analyzed the content and has not provided access to any other person to review

17

the content of the file.  The encrypted compressed storage file is being held securely at the FBI office in Rapid City, awaiting this search warrant.

44.     Your affiant, in consideration of the recent development in the Eighth Circuit, the *Nyah* decision of June 26, 2019, submits this request to search the DVD created on January 21, 2020, which contains the material provided by Facebook which was received by your affiant's office outside the 14-day window on the original search warrant dated January 6, 2020.

## INFORMATION ON FACEBOOK

45.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook allows individuals to specifically communicate with another person through a Facebook application called "Messenger."  In my training and experience, people who engage in online criminal activity often also utilize Facebook to meet victims and other offenders and to chat.  Even if Facebook was not utilized in the chat at issue, there is probable cause to believe there will be evidence regarding the online solicitation of minors within the target Facebook account.

46.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

18

47.    Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.   This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.   Facebook also assigns a user identification number to each account.

48.    Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group.   A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."   If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.   Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

49.    Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.   By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone

with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

50.    Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

51.    Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or

video.  For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

52.    Facebook users can exchange private messages on Facebook with other users.  These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information.  Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.  In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook.  These chat communications are stored in the chat history for the account.  Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

53.    If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

54.    Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages.  Facebook users can "like" Facebook posts or updates, as well as webpages or content on third party (*i.e.*, non-

Facebook) websites.   Facebook users can also become "fans" of particular Facebook pages.

55.    Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.   Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present.  The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend.  The activity log is visible to the user but people who visit the user's Facebook page cannot viewed it.

56.    Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

57.    The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page.   Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

58.    Facebook also has a Marketplace feature, which allows users to post free classified ads.  Users can post items for sale, housing, jobs, and other items on the Marketplace.

59.   In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform.   When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.   Facebook uses the term "Neoprint" to describe an expanded view of a given user profile.   The "Neoprint" for a given user can include the following information from the user's profile:   profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

60.   Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address.   These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action.   For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

61.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

62.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may

24

be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the user accessed or used the account. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining, the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

63.   Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and

25

information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

64.   I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## REQUEST/JUSTIFICATION FOR ORDER OF NONDISCLOSURE

65.   The United States respectfully applies for an order of nondisclosure to Facebook under 18 U.S.C. § 2705(b) regarding the accounts associated with the following accounts:   Bill Redd-Facebook ID: 100001520304503; Colton Bagola-Facebook ID: 100001907102077; GS M Ardnasac, Vanity Id: Casandra.goings; and Jaden Richards-Facebook IDs 100006468780193, 100004690455232, and 100044511186608, Sloane Bull Bear, Vanity ID – sloane.bullbear.92, Facebook ID – 100042860717588, that are stored at premises controlled by Facebook Inc., (hereinafter "the accounts").  The United States is seeking this search warrant for user information, including all names, addresses, IP addresses, including historical, telephone numbers, other email

26

addresses, information on length and types of services and any means of payment related to these accounts under the authority given by 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A).   Based on § 2703(c)(3), the United States is not required to provide notice to the subscriber.  Under § 2705(b), the United States may apply to the court for an order commanding Facebook not to notify the subscriber of the existence of the search warrant.  The court may decide what length of time shall apply to the order of nondisclosure if the court determines the notification to the subscriber could result in one of the five factors listed in the statute, which includes destruction of or tampering with evidence. 18 U.S.C. § 2705(b)(3).  The basis for the request is that such disclosure could cause any person with access to the accounts, or any related account or account information, to tamper with or modify the content or account information and thereby destroy or tamper with evidence and otherwise seriously jeopardize the investigation.  Especially due to the ease of access to Facebook, its content can be modified by persons with internet access and sufficient account information. As such, the United States respectfully requests this Court enter an order commanding Facebook not to notify the user of the existence of this warrant.

### **REQUEST FOR SEALING**

66.    I request that the Court order that all papers submitted in support of this application, including this affidavit, the application, the warrant, and the Order itself, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all the

targets of the investigation.   Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

## **CONCLUSION**

67.   Based on the forgoing, I request that the Court issue the proposed search warrant.

68.   This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).

69.   Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Dated: 1/29/20

Matt Weber, Special Agent
Federal Bureau of Investigation

SUBSCRIBED and SWORN to in my presence
this 29ᵗʰ day of January, 2020.

DANETA WOLLMANN
U.S. MAGISTRATE JUDGE

28

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant applies to the DVD containing the January 21, 2020, download of the encrypted compressed storage file containing the content of the Facebook user account associated with the user name: Bill Redd-Facebook ID: 100001520304503, Colton Bagola-Facebook ID: 100001907102077, GS M Ardnasac, Vanity Id: Casandra.goings, and Jaden Richards-Facebook IDs 100006468780193, 100004690455232, and 100044511186608, Sloane Bull Bear, Vanity ID – sloane.bullbear.92, Facebook ID – 100042860717588, which are in secure storage at the Rapid City Office of the Federal Bureau of Investigation.

## ATTACHMENT B

## Particular Things to be Seized

All information described below that constitutes fruits, evidence and instrumentalities of violations of the Target Offenses from November 15, 2019, until the date of the warrant for the user IDs listed in Attachment A:

(a)   All contact and personal identifying information, including for: Facebook Users: Bill Redd-Facebook ID: 100001520304503, Colton Bagola-Facebook ID: 100001907102077, GS M Ardnasac, Vanity Id: Casandra.goings, and Jaden Richards-Facebook IDs 100006468780193, 100004690455232, and 100044511186608, Sloane Bull Bear, Vanity ID – Sloane.bullbear.92, Facebook ID – 100042860717588, full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)   All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c)   All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d)   All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall

postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)   All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f)   All "check ins" and other location information;

(g)   All IP logs, including all records of the IP addresses that logged into the account;

(h)   All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i)   All information about the Facebook pages that the account is or was a "fan" of;

(j)   All past and present lists of friends created by the account;

(k)   All records of Facebook searches performed by the account;

(l)   All information about the user's access and use of Facebook Marketplace;

(m)   The types of service utilized by the user;

2

(n)   The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o)   All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p)   All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

(q)   Any and all geo location data information.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

### for the

### District of South Dakota

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No.   5:20-mj-23 |
| DVD containing January 21, 2020, download of the encrypted compressed storage file containing the content of Facebook Users "Bill Redd," Vanity Id: billredd14, Facebook ID: 100001520304503, Colton Bagola, Facebook ID: 100001907102077, GS M Ardnasac, Vanity ID: Casandra.goings and Jaden Richards-Facebook IDs 100006468780193, 100004690455232, and 100044511186608, Sloane Bull Bear, Vanity ID – sloane.bullbear.92, Facebook ID – 100042860717588, which are in secure storage at the Rapid City Office of the Federal Bureau of Investigation. | ) ) ) ) ) ) ) | **SEALED** |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____ South Dakota
*(identify the person or describe the property to be searched and give its location)*:

DVD containing January 21, 2020, download of the encrypted compressed storage file containing the content of Facebook Users "Bill Redd," Vanity Id: billredd14, Facebook ID: 100001520304503, Colton Bagola, Facebook ID: 100001907102077, GS M Ardnasac, Vanity Id: Casandra.goings and Jaden Richards-Facebook IDs 100006468780193, 100004690455232, and 100044511186608, Sloane Bull Bear, Vanity ID – sloane.bullbear.92, Facebook ID – 100042860717588, which are in secure storage at the Rapid City Office of the Federal Bureau of Investigation, as further described in Attachments A and B, which are attached to and incorporated in this Application and Affidavit.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Evidence of a crimes of Second Degree Murder, in violation of 18 U.S.C. §§ 1111(a) and 1153, and Accessory after the Fact, in violation U.S.C. §§ 1111(a) and 3, as outline in the affidavit in support of the search warrant, which is incorporated herein by this reference.

I find that the affidavit, or any recorded testimony, establishes probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before *Feb. 12, 2020*  *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Daneta Wollmann _____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   01/29/2020  *3 pm*          _____
                                                                *Judge's signature*

City and state:   Rapid City, SD          Daneta Wollmann, U.S. Magistrate Judge
                                                      *Printed name and title*

cc AUSA Poppen and Agent

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>  5:20-mj-23 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| Certification |
|---|
|      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge. |

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*